89 F.3d 835
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Bobby SCALES, Plaintiff-Appellant,
v.
COMMISSIONER OF SOCIAL SECURITY, Defendant-Appellee.
 No. 95-1613.
 United States Court of Appeals, Sixth Circuit.
 June 20, 1996.
 
 Before: KRUPANSKY, DAUGHTREY, and MOORE, Circuit Judges.
 OPINION
 MOORE, Circuit Judge.
 
 
 1
 Bobby Scales appeals the district court's order granting summary judgment to the Commissioner of Social Security on the issue of whether Scales is entitled to disability benefits. Because substantial evidence supports the denial of benefits, we affirm the district court's order.
 
 
 2
 * Bobby Scales applied for disability insurance benefits under 42 U.S.C. § 423 and supplemental security income benefits based on disability under 42 U.S.C. § 1382. Upon denial of the application, he requested a hearing before an administrative law judge (an "ALJ"). ALJ Joseph A. Delaney held the hearing and decided that, although Scales suffered from severe pulmonary sarcoidosis and carpal tunnel syndrome, and although he was unable to return to the kind of work he had done before, he was nonetheless able to perform a significant number of jobs in the regional economy requiring light work. Scales therefore did not qualify as disabled and could not receive any benefits based on disability.
 
 
 3
 The Appeals Council of the Social Security Administration (the "SSA") vacated ALJ Delaney's decision and remanded the case for evaluation of Scales's subjective complaints of pain, pursuant to Social Security Ruling 88-13, 1988 WL 236011 (July 20, 1988) (current version at 20 C.F.R. § 404.1529 (1996)). On remand, ALJ Robert D. Stalker held a new hearing, but he came to the same conclusion as ALJ Delaney. After the Appeals Council denied Scales's request for review of ALJ Stalker's ruling, Scales sought review in federal district court. A magistrate judge recommended reversing ALJ Stalker's decision, granting summary judgment in favor of Scales, and remanding the case with orders to award Scales benefits. The district court, however, rejected the magistrate judge's recommendation and granted summary judgment in favor of the SSA. This appeal followed.
 
 II
 
 4
 We review a grant of summary judgment de novo. Plott v. General Motors Corp., 71 F.3d 1190, 1193 (6th Cir.1995), cert. denied, 116 S.Ct. 1546 (1996). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...." 42 U.S.C. § 405(g). Substantial evidence is more than a mere scintilla of evidence. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Jones v. Secretary, Health and Human Services, 945 F.2d 1365, 1369 (6th Cir.1991) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229 (1938))).
 
 III
 
 5
 Evaluating whether an individual is eligible for disability insurance benefits and supplemental security income benefits based on disability involves a five-step process. See Wyatt v. Secretary of Health and Human Services, 974 F.2d 680, 683-84 (6th Cir.1992). The parties agree that Scales is eligible under the first four steps of this process. The dispute here therefore centers on whether the Commissioner of Social Security has carried the burden of proving that, taking into account age, education, and work experience, Scales retains the "residual functional capacity" to engage in gainful work that exists in significant numbers in the regional economy. If the Commissioner has not carried this burden, Scales is considered disabled and is eligible for benefits. Id. at 684; 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 404.1520(f), 416.920(f).
 
 
 6
 In deciding the issue of residual functional capacity, a court may consult the "grids" located at 20 C.F.R. pt. 404, subpt. P, app. 2. These grids cross-reference the kind of work to which an applicant's impairment restricts him or her with the applicant's age, education, and work experience, to produce a result of either "disabled" or "not disabled." Because the parties here agree that at the time ALJ Stalker made his decision Scales was closely approaching advanced age, had a limited education, and had no transferable job skills, the only disputed issue is whether Scales's health problems restricted him to "sedentary work" or "light work." See 20 C.F.R. § 404.1567(a)-(b) (defining "sedentary work" and "light work"). According to the grids, Scales would be eligible for benefits if he were restricted to sedentary work, but would be ineligible if able to perform light work. Compare 20 C.F.R. pt. 404, subpt. P, app. 2, table 1 with id. pt. 404, subpt. P, app. 2, table 2.
 
 IV
 
 7
 Substantial medical evidence supports ALJ Stalker's decision that Scales can perform jobs that involve light work and that exist in significant numbers in the regional economy. All the doctors who examined Scales agreed that his sarcoidosis and asthma restrict his ability to breathe to such an extent that he cannot perform a job that involves significant exertion or frequent exposure to fumes, dust, humidity, or temperature extremes. Only Scales's personal physician, Milton J. Rosenbaum, however, ever voiced the opinion that Scales cannot work at all, and his notes subsequent to reaching this conclusion indicate an improvement in Scales's condition. Two other doctors who examined Scales, Michael J. Simpson and Edwin J. Westfall, considered his breathing impairment to be "mild" or "moderate," and a third examining physician, Neil A. Friedman, imposed only climbing and clean-air restrictions, allowing Scales to engage in jobs that required walking, standing, pushing, pulling, and reaching.
 
 
 8
 Furthermore, neither Simpson nor Westfall nor Friedman ever documented any symptoms of carpal tunnel syndrome or other neuropathy in Scales's hands. All three noted normal strength, dexterity, range of motion, and motor function in the upper extremities, and Westfall additionally reported no loss of tactile sensitivity. Friedman specifically found no neuro-motor or musculoskeletal impairments.
 
 
 9
 Other evidence supports ALJ Stalker's decision as well. See Jones, 945 F.2d at 1369-70 (noting importance of considering more than objective medical evidence when evaluating presence of disabling pain); 20 C.F.R. § 404.1529 (describing interaction of objective and other evidence). Scales himself submitted "activity sheets" detailing his daily routine, which show that he is able to engage in almost all everyday activities, although he cannot do yardwork and has to rest after exertion. He also admitted at the hearing that standing is not a problem and that he is able to function adequately if he sets his own pace.
 
 
 10
 Of course, other evidence favors a finding of disability. For instance, Scales testified that he has to rest for half an hour after simply going down a flight of stairs, loading laundry, and returning upstairs. A vocational expert testified that if Scales is to be believed, his need for rest after so little exertion would render him unable to work at all. She believed, however, that the evidence as a whole indicated a capacity to do restricted light work. In any event, ALJ Stalker specifically declined to give full credit to Scales's complaints.
 
 
 11
 Perhaps the strongest argument in Scales's favor is that ALJ Stalker and the vocational expert decided that the jobs of mail clerk and self-service gas station attendant involved light work. The definition of light work, however, seems to indicate more walking, lifting, carrying, or pushing and pulling of controls than the vocational expert described as part of those jobs. See 20 C.F.R. § 404.1567(b). Unfortunately for Scales, the medical evidence and his own testimony support a finding that he can lift, stand, push, and pull with no restrictions and can walk and carry in moderation. These abilities are consistent with restricted light work. See Oliver v. Secretary of Health and Human Services, 804 F.2d 964, 966 (6th Cir.1986) (upholding finding that individual with restrictions similar to Scales's could perform light work).
 
 
 12
 Scales also argues that the self-service gas station attendant job would involve too much exposure to gasoline fumes. The vocational expert, however, characterized the exposure as occasional, and ALJ Stalker accordingly did not think that occasional fumes would disqualify Scales from the job. Furthermore, Scales does not dispute that the mail clerk option alone provides over two thousand jobs in the regional economy.
 
 
 13
 In short, none of the contrary evidence was so compelling that it merits reversal here; a reasonable mind might accept the entirety of the evidence as adequate to support ALJ Stalker's conclusion. Scales's brief on appeal simply makes general claims that the ALJ ignored testimony and other overwhelming evidence of disability. ALJ Stalker's written opinion, however, shows that he took all the evidence into account and considered the restrictions that Scales's poor health imposed.
 
 V
 
 14
 Scales urges this court to consider the results of his examination by the Center for Occupational and Environmental Medicine (the "COEM"), which were not before ALJ Stalker but which were presented to the Appeals Council when it denied review of the ALJ decision. When the Appeals Council is presented with new evidence but nonetheless declines to review the underlying claim, this court cannot consider that evidence. Rather, we are confined to review the decision of the ALJ, and we may remand the case for administrative consideration of the new evidence only if the appellant demonstrates good cause. Cotton v. Sullivan, 2 F.3d 692, 695-96 (6th Cir.1993). Scales has not even attempted to show good cause for the failure to submit the results of the examination to ALJ Stalker.
 
 
 15
 In any event, the new evidence would not make a difference in the outcome of this case. The results of the COEM tests generally indicate a better breathing capacity than similar tests conducted by Simpson and Westfall. Only the conclusions in the COEM report are more pessimistic than those of the examining physicians, and those conclusions were reached by a technician who characterized the report as "preliminary" and cautioned against its clinical use unless reviewed by a doctor. The COEM report is therefore of little consequence.
 
 
 16
 For the foregoing reasons, we AFFIRM the judgment of the district court as expressed in its memorandum opinion and order, upholding as based on substantial evidence the ALJ's denial of benefits.